# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

FEB 0 5 2026

CHRISTOPHER DEMOND THOMAS,
Plaintiff,

Nathan Ochsner, Clerk of Court

v.

Civil Action No. 4:25-cv-05869

TRANSUNION LLC;
Defendant.

## FIRST AMENDED COMPLAINT
## (Fair Credit Reporting Act – Disclosure-Wide Procedural Violations)

Plaintiff Christopher Demond Thomas ("Plaintiff"), proceeding pro se, brings this First Amended Complaint against Defendant TransUnion LLC ("TransUnion" or "Defendant"), and alleges as follows:

### I. PARTIES

1.  Plaintiff Christopher Demond Thomas is a natural person and a "consumer" within the meaning of 15 U.S.C. §1681a(c).

2. Defendant TransUnion LLC is a consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f), engaged in the business of assembling, maintaining, and furnishing consumer reports nationwide, including reports concerning Plaintiff.

### II. JURISDICTION AND VENUE

3. This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant conducts business in this District and the acts and omissions giving rise to Plaintiff's claims occurred, in substantial part, within this District.

## III. NATURE OF THE ACTION

6. This action does not concern a single tradeline, inquiry, or isolated inaccuracy.

7. Plaintiff challenges TransUnion's disclosure-wide procedures governing identity-theft disputes, reinvestigations, public-record reporting, consumer file maintenance, verification logic, reinsertion practices, access controls, third-party verification, and disclosure suppression.

8. Plaintiff alleges that TransUnion maintains fragmented internal consumer files, relies on contaminated identifiers, performs reinvestigations where mandatory blocking is required, reinserts identity-theft information without certification or notice, suppresses required disclosures, obstructs consumer access, and continues publishing inaccurate information despite repeated statutory notice.

## IV. FACTUAL ALLEGATIONS

A.  Timeframe, Notice, and Receipt

9. Between October 2025 and January 2026, Plaintiff submitted multiple written dispute and identity-theft packets to TransUnion through numerous independent channels, including:

   a. Certified United States Postal Service mail with return receipt;

   b. Priority United States Postal Service mail;

   c. TransUnion's consumer dispute systems;

   d. Secure electronic mail;

e. Over forty (40) complaints submitted through the Consumer Financial Protection Bureau ("CFPB"), each transmitting exact copies of Plaintiff's dispute packets and supporting documentation to TransUnion, all of which remain preserved in the CFPB portal as independent proof of receipt, content, and timing;

f. Complaints submitted to the Texas Attorney General;

g. Complaints submitted to the Better Business Bureau; and

h. Direct communications with TransUnion representatives via secure text-based messaging systems controlled by TransUnion.

10. Each submission placed TransUnion on actual notice that Plaintiff was a documented identity-theft victim and that multiple items across Plaintiff's consumer file were inaccurate, unverifiable, or unlawfully reported.

11. TransUnion received Plaintiff's identity-theft packets and supporting documentation on multiple occasions during this period. The four-business-day statutory blocking deadline under 15 U.S.C. §1681c-2(a) expired without TransUnion applying any mandatory identity-theft block.

B. Mandatory Identity-Theft Block Violations – 15 U.S.C. §1681c-2(a)

12. Each dispute packet opened with an express statutory notice invoking 15 U.S.C. §1681c-2(a), directing TransUnion's Consumer Dispute Department that the submission constituted a mandatory identity-theft block request requiring blocking within four business days, and directing TransUnion's Legal and Compliance Departments not to route the dispute through automated e-OSCAR workflows.

13. Each packet included a valid FTC Identity Theft Report, government-issued identification, verified proof of address, a Verified Identifier Declaration ("C-1"), and itemized lists of fraudulent accounts, inquiries, identifiers, addresses, and inaccurate bankruptcy remarks.

14. Under 15 U.S.C. §1681c-2(a), TransUnion was required to block identity-theft information within four business days of receipt.

15. TransUnion refused to apply the mandatory block and instead initiated reinvestigations, verification activity, and continued publication of disputed information.

16. Once TransUnion received Plaintiff's FTC Identity Theft Report and Verified Identifier Declaration, any reinvestigation, verification, or continued publication was unlawful as a matter of law.

C. Fragmented Consumer Files and Contaminated Identifiers (C-1)

17. TransUnion maintained multiple internal consumer file numbers for Plaintiff using different combinations of names, addresses, and personal identifiers.

18. These fragmented files contained different tradelines, inquiries, public-record remarks, and identifiers, resulting in incomplete and inconsistent disclosures.

19. TransUnion relied on identifiers Plaintiff expressly identified as fraudulent and identity theft derived, including fraudulent address and name variants, to "verify" disputed information.

20. TransUnion continues to publish and mail correspondence to a fraudulent address variant while simultaneously publishing a consumer statement containing Plaintiff's verified address, demonstrating internal inconsistency and contaminated verification in violation of 15 U.S.C. §§1681e(b) and 1681c-2(a).

D. Bankruptcy Misverification and Identifier Cross-Contamination

21. TransUnion continues to report a bankruptcy associated with fraudulent address variants, including a Las Vegas address and 3546 Bartolo Brush Court, Katy, Texas—addresses TransUnion has already surface-removed from Plaintiff's disclosures as fraudulent.

22. TransUnion claimed verification through third-party sources including LexisNexis and PACER while failing to obtain certified court verification and while relying on disputed identifiers.

23. The bankruptcy is not reported by other national consumer reporting agencies, and the U.S. Bankruptcy Court disclaimed furnishing the data relied upon by TransUnion.

24. Because the bankruptcy record is linked to identifiers Defendant has already identified as fraudulent, verification of the bankruptcy without those identifiers is logically and procedurally impossible.

E. Sham Investigations and Bad-Faith Documentation Demands

25. TransUnion repeatedly demanded FTC reports, identification, and proof of address that it had already received in full through certified mail, CFPB transmission, and regulatory complaints.

26. Despite actual receipt, TransUnion issued form responses claiming documentation was "required" while simultaneously initiating reinvestigations without requiring or relying on that documentation.

27. TransUnion permitted third-party vendors, including LexisNexis, to open reinvestigations on Plaintiff's behalf without requiring the same documentation TransUnion claimed was missing.

28. These sham investigations were a bad-faith substitute for mandatory blocking and were designed to delay compliance, perpetuate contaminated verification, and continue publication of identity-theft information.

F. Reinsertion Without Certification or Notice – 15 U.S.C. §1681i(a)(5)

29. TransUnion reinserted previously removed identity-theft-related accounts, inquiries, and public-record remarks without obtaining furnisher certification.

30. TransUnion failed to provide Plaintiff with the required five-day reinsertion notice.

G. Disclosure Suppression and Access Blocking – 15 U.S.C. §1681g

31. TransUnion failed to provide a complete consumer disclosure, including verification sources, vendor identities, system flags, access logs, reinsertion records, and internal routing data.

32. TransUnion blocked Plaintiff's online access to disclosures and dispute results while continuing to maintain and furnish Plaintiff's consumer data.

33. Any uncertainty regarding the current contents of Plaintiff's consumer file is solely attributable to Defendant's access blocking and disclosure suppression and cannot defeat plausibility or standing.

H. Fraudulent Inquiries and Secondary Bureau Contamination

34. TransUnion continued publishing hard inquiries, soft inquiries, promotional inquiries, inquiry analysis entries, and ChexSystems-related information derived from contaminated identifiers circulated through secondary bureaus and data brokers.

I. Pattern Summary of Systemic Noncompliance

35. The conduct alleged herein reflects a repeated and coordinated pattern of noncompliance rather than isolated error. Across multiple months, dispute channels, regulatory portals, and internal systems, TransUnion consistently ignored mandatory identity-theft blocking, relied on contaminated identifiers it knew were fraudulent, conducted sham reinvestigations, concealed disclosure content, obstructed Plaintiff's access, and continued publication for commercial benefit. This pattern demonstrates willful disregard of statutory duties and confirms that Defendant's violations were systemic, intentional, and profit-driven.

J. Damages and Ongoing Harm

36. As a direct and proximate result of Defendant's conduct, Plaintiff suffered out-of-pocket expenses, loss of time, reputational injury, denial of credit, higher interest rates, emotional distress, and ongoing identity-theft risk.

37. As a direct and proximate result of Defendant's continued publication of inaccurate and identity-theft-derived information, Plaintiff was denied credit on multiple occasions during the relevant period. In each instance, lenders expressly identified TransUnion data as a determining or contributing factor in the adverse decision. These denials included consumer credit products for which Plaintiff was otherwise qualified. Defendant's unlawful reporting was therefore a substantial factor in concrete economic harm, lost credit opportunities, increased cost of credit, and reputational injury.

## V. CAUSES OF ACTION

COUNT I – Failure to Block Identity-Theft Information
(15 U.S.C. §1681c-2(a))

38. Defendant knowingly failed to apply mandatory identity-theft blocks after receipt of complete documentation, constituting willful noncompliance.

COUNT II – Failure to Assure Maximum Possible Accuracy
(15 U.S.C. §1681e(b))

39. Defendant willfully relied on fragmented files and contaminated identifiers while publishing internally inconsistent information.

COUNT III – Failure to Conduct Lawful Reinvestigation
(15 U.S.C. §1681i)

40. Defendant conducted reinvestigations where blocking was required and relied on unlawful third-party verification loops.

COUNT IV – Failure to Provide Full Disclosure
(15 U.S.C. §1681g)

41. Defendant willfully suppressed disclosure content and obstructed Plaintiff's access to his consumer file.

COUNT V – Unlawful Use and Publication of Consumer Data
(15 U.S.C. §1681b)

42. Defendant continued publishing inaccurate information without a permissible purpose.

COUNT VI – Willful and Negligent Noncompliance

(15 U.S.C. §§1681n, 1681o)

43. Defendant's conduct was knowing, reckless, systemic, and profit-driven.

COUNT VII – Reinsertion Without Certification or Notice
(15 U.S.C. §1681i(a)(5))

44. Defendant unlawfully reinserted identity-theft information without certification or notice.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests judgment in his favor and an award of:

A. Actual damages;
B. Statutory damages;
C. Punitive damages;
D. Injunctive relief requiring Defendant to:

- Produce dispute intake and routing logs;
- Produce access-blocking records and system flags;
- Produce reinsertion logs and timestamps;
- Produce verification sources and vendor communications;
- Correct Plaintiff's consumer file and permanently exclude contaminated identifiers;

E. Costs and such other relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Feberary 05, 2026

Christopher Demond Thomas
Plaintiff, Pro Se
2918 W Grand Pkwy N, Ste 150 Box 146
Katy, TX 77449
Chris70281@icloud.com
713-282-0717